IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

ANDREA L. MEHNER,                )
                                 )
                Plaintiff,       )        4:10CV3009
                                 )
        v.                       )
                                 )
DEPARTMENT OF HOMELAND           )        MEMORANDUM OPINION
SECURITY, et al.,                )
                                 )
                Defendants.      )
_____ )


        This matter is before the Court on several Motions to

Dismiss filed by defendants (Filing Nos. 56, 58, 60 and 64).  As

set forth below, the motions will be granted.

### I.  BACKGROUND

        On January 20, 2010, numerous plaintiffs, including the

Mehner Family Trust and Andrea Mehner, filed this action, through

counsel, against the Department of Homeland Security, the Secret

Service, the City of Omaha, the Omaha Police Department ("OPD"),

the Douglas County Sheriff's Office, the U.S. Attorney's Office,

nine named individuals, 50 Jane Does and 50 John Does (Filing No.

1).  However, on June 25, 2010, plaintiffs' counsel filed a

Motion to Withdraw from Representation (Filing No. 20).  The

Magistrate Judge granted counsel's Motion to Withdraw and ordered

plaintiffs to either retain substitute counsel or file a

statement informing the Court of their intent to proceed without

counsel (Filing No. 21).

On August 10, 2010, "Andrea Mehner for Mark A. Mehner" filed a motion, purportedly on behalf of all plaintiffs, seeking a 60-day extension of time to obtain substitute counsel (Filing No. 25 at CM/ECF p. 2). The only signature appearing on this pleading was that of "Andrea Mehner for Mark A. Mehner." (*Id*.) Magistrate Judge Zwart granted the Motion for Extension of Time (Filing No. 27).

On October 11, 2010, Andrea Mehner sent a document entitled "Motion for Leave to Amend" by e-mail to Magistrate Zwart's chambers and by facsimile to the clerk of the court (Filing No. 28-1). Magistrate Zwart did not consider this a properly filed motion and electronically filed the document as evidence of plaintiffs' intent to proceed without counsel (Filing No. 29 at CM/ECF p. 2). Magistrate Zwart also entered a Findings and Recommendation advising Senior United States District Court Judge Richard Kopf to dismiss the Mehner Family Trust as a plaintiff in this matter. (*Id*.) Judge Kopf adopted Judge Zwart's Findings and Recommendation and dismissed the Mehner Family Trust because a trust must be represented by a licenced attorney (Filing No. 32).

Thereafter, the named defendants filed several Motions to Dismiss (Filing Nos. 35, 38, 41, and 42). Plaintiffs failed to respond and ultimately Judge Kopf dismissed this matter

-2-

without prejudice because plaintiffs failed to prosecute this matter diligently (Filing Nos. 49 and 50.)

On June 1, 2011, Andrea Mehner filed a Motion for Relief From Judgment on behalf of herself and, purportedly, also on behalf of Raymond Mehner, Barbara Mehner, Mark Mehner, and Anthony Mehner (Filing No. 51 at CM/ECF p. 1). However, because Andrea Mehner was the only plaintiff who signed the motion, Judge Kopf granted the motion as to only Andrea Mehner.[1]  (Filing No. 55 at CM/ECF p. 2.)  In doing so, Judge Kopf gave defendants 20 days to answer or otherwise respond to Andrea Mehner's claims. (*Id*.)  Thereafter, all of the named defendants filed Motions to Dismiss along with Briefs in Support (Filing Nos. 56, 57, 58, 59, 60, 61, 64 and 65).  Two of these motions were alternatively

---

[1] Although the Complaint alleges 11 total causes of action, only four are federal claims pertaining to Andrea Mehner's rights:  Counts I, IV, VI and IX (Filing No. 1 at CM/ECF pp. 14-35).  Counts II and III are also federal claims, but these claims specifically reference Mark Mehner's rights and remain dismissed in accordance with Judge Kopf's June 1, 2011, Order and Judgment. (*Id*. at CM/ECF pp. 16-19; Filing Nos. 49 and 50.) *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (stating plaintiff must show that complained-of conduct caused injury in fact to plaintiff that favorable judgment will redress); *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005) (holding prudential limitations on federal court jurisdiction require parties to assert their own legal rights or interests; claims for federal relief cannot rest on legal rights or interests of others); *Frey v. City of Herculaneum*, 44 F.3d 667, 670 (8th Cir. 1995) (finding standing is element of Article III case or controversy requirement and must be considered as threshold matter).  The Complaint's remaining causes of action allege claims pursuant to state law (Filing No. 1 at CM/ECF pp. 22-35).

filed as Motions for Summary Judgment (Filing No. 60; Filing No. 65 at CM/ECF p. 1), and the other two were submitted with references to evidence previously filed with the Court (Filing Nos. 40, 56, 58).  On January 17, 2012, Judge Kopf reviewed defendants' Motions and the evidence filed in support of those motions (Filing No. 67).  Judge Kopf informed the parties that he intended to treat the Motions to Dismiss as Motions for Summary Judgment.  (*Id*.)  Judge Kopf also gave Andrea Mehner additional time to submit a response and additional material pertinent to the Motions.  (*Id*.)

On February 17, 2012, new counsel appeared on behalf of Andrea Mehner and moved for an extension of time to file a response to defendants' motions (Filing Nos. 68 and 69).  In a Text Order, Judge Kopf granted the Motion to Extend and directed Andrea Mehner to file a response by March 27, 2012 (Filing No. 71).  On March 27, 2012, Mehner filed a response to defendants' Motions along with a Brief in Support (Filing Nos. 72 and 73).  However, because these documents were illegible, the clerk of the court directed Mehner to refile the documents (Filing No. 76).  Andrea Mehner complied and refiled a legible Response and Brief on April 10, 2012 (Filing Nos. 77 and 78).  Defendants have filed replies to Andrea Mehner's Response (Filing Nos. 74, 75 and 79).  On May 2, 2012, this matter was reassigned to the undersigned under the Court's relatedness rules (Filing No. 81).

-4-

II.  ANALYSIS

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law."  NECivR 56.1(a)(1).  If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts."  NECivR 56.1(b)(1).  Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition.  Id.  "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response."  Id.; see also Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants Department of Homeland Security, Jane Doe 1-50, John Doe 1-50, John Gutsmiedl ("Gutsmiedl"), Matthew Loux ("Loux"), Secret Service, Jan Sharp ("Sharp"), Joe Stecher ("Stecher"), Nancy Svoboda ("Svoboda"), U.S. Attorney's Office, and Michael Wellman ("Wellman") (collectively the "Federal Defendants") have submitted properly referenced material facts in

-5-

accordance with the Court's Local Rules (Filing No. 61 at CM/ECF pp. 3-13).  Rather than address these facts in accordance with the Court's Local Rules, Andrea Mehner has chosen to "restate, incorporate and adopt those factual allegations contained in [her] Complaint."[2]  (Filing No. 78 at CM/ECF p. 1.)  Accordingly, the Federal Defendants' statement of material facts is deemed admitted and the Court adopts the following relevant material facts.

## A.   Relevant Material Facts

1.   Gutsmiedl is, and was at all relevant times, the Resident Agent in Charge ("RAIC") for the Department of Homeland Security, Secret Service, Omaha Resident Office  (Filing No. 36-5 at CM/ECF pp. 1-2).

2.   At all relevant times, Gutsmiedl supervised Loux, a Special Agent ("SA") who worked for the Department of Homeland Security, Secret Service, Omaha Resident Office from May 2005 to September 2008.  Since September 2008, Loux has been a SA with the Department of Justice, Office of Inspector General located in Houston, Texas.  (*Id*.; Filing No. 36-4 at CM/ECF pp. 1-2.)

---

[2] The Court notes that the majority of these facts and allegations relate to Mark Mehner's rights and his criminal case, Case No. 8:07CR83 (*See* Filing No. 1).  Because Mark Mehner is no longer a plaintiff in this matter, the Court will only consider those facts and allegations that are specifically relevant to Andrea Mehner's rights.

3.   Stecher served as the United States Attorney for the District of Nebraska from October 2, 2006, to October 1, 2009 (Filing No. 36-6 at CM/ECF p. 2).

4.   Sharp is, and was at all relevant times, the Chief of the Criminal Division and an Assistant United States Attorney ("AUSA") for the District of Nebraska (Filing No. 36-1 at CM/ECF pp. 1-4).

5.   At all relevant times, Sharp supervised Wellman, an AUSA for the District of Nebraska.  AUSA Wellman was assigned criminal Case No. 8:07CR83, which involved allegations that Mark Mehner devised a scheme to defraud the Zion Lutheran Church. (*Id*. at CM/ECF pp. 2-3; Filing No. 36-2 at CM/ECF pp. 1-2.)

6.   Svoboda is, and was at all relevant times, an AUSA for the District of Nebraska and the Chief of the Asset Forfeiture Unit.  Svoboda handled a civil forfeiture action, Case No. 8:07CV79, against a residence locally known as 1201 and 1225 North 138th Circle in Omaha, Nebraska ("Residence") and a 2003 Cadillac Escalade ("Cadillac") (Filing No. 36-3 at CM/ECF pp. 1-2).

7.   The Secret Service directs and funds the Omaha Metro Area Financial Crimes Task Force, which is, and was at all relevant times, made up of seven member agencies, including representatives from the Secret Service, OPD, Nebraska State Patrol, Lincoln Police Department, Iowa Division of Criminal

-7-

Investigation, Council Bluffs Police Department, and Papillion
Police Department.  The Task Force member agencies share
resources to investigate both federal and state cases.  At all
relevant times, Gutsmiedl oversaw the Task Force (Filing No. 36-5
at CM/ECF p. 2; Filing No. 36-4 at CM/ECF p. 2.)

        8.  The Secret Service began investigating Mark Mehner
after SA Loux spoke to a Wells Fargo Bank Investigator who
mentioned that he had a case involving Mark Mehner.  SA Loux
relayed this discussion to Gutsmiedl, who assigned SA Loux to the
case and directed him to investigate.  Gutsmiedl was not involved
in day-to-day operations of the investigation (Filing No. 36-5 at
CM/ECF pp. 3-4; Filing No. 36-4 at CM/ECF pp. 2-3.)

        9.  Gutsmiedl referred the Mehner case to AUSA Sharp.
AUSA Sharp accepted the case and assigned it to AUSA Wellman
(Filing No. 36-5 at CM/ECF p. 3; Filing No. 36-1 at CM/ECF pp. 2-
3).

        10.  AUSA Wellman handled the case from the time it was
assigned to him through sentencing (Filing No. 36-2 at CM/ECF p.
2).  SA Loux and OPD Detective Dean Miller ("Miller") were also
assigned to the case.  (*Id*.)

        11.  On February 22, 2007, a federal grand jury
returned a four-count indictment against Mark Mehner.  (*Id*.; Case
No. 8:07CR83, Filing No. 1.)

-8-

12.   During the investigation of Mark Mehner, SA Loux
believed that real property and a car were purchased with
proceeds from the fraud scheme.  As a result, Secret Service
asked the U.S. Attorney's Office to file a civil forfeiture
action against the Residence and the Cadillac.  Secret Service
presented a copy of a "drive by appraisal" obtained in February
2006, stating the Residence was valued at $1.8 million.  Secret
Service had also obtained a title search for the Residence, which
showed encumbrances by Wells Fargo in the amount of approximately
$1.5 million (Filing No. 36-3 at CM/ECF p. 2).

13.   On February 23, 2007, AUSA Svoboda filed a civil
forfeiture complaint against the Residence and the Cadillac,
alleging the Residence and the Cadillac constituted or were
derived from proceeds traceable to bank fraud and wire fraud
conducted by Mark Mehner.  She alleged title to the Residence was
held by the Mehner Family Living Trust and Raymond M. Mehner,
Trustee.  The case was styled *United States of America v. Lots 32
and 33, Linden Estates etc.*, Case No. 8:07CV79 (Case No.
8:07CV79, Filing No. 1; Filing No. 36-3 at CM/ECF p. 3).

14.   Secret Service informed AUSA Svoboda that the
Residence was unoccupied.  In light of this news and in
consideration of the Residence's value, as well as the time of
year (winter), AUSA Svoboda decided to request a writ of entry
(Filing No. 36-3 at CM/ECF pp. 2-3).

15.  AUSA Svoboda filed an application for a writ of entry under the authority of 18 U.S.C. § 985(b)(2).  This application requested writ of entry for the purpose of conducting an inspection and inventory of the property involved in the civil forfeiture (Case No. 8:07CV79, Filing Nos. 1 and 5; Filing No. 36-3 at CM/ECF p. 3).

16.  On February 26, 2007, Magistrate Judge Thalken granted the application and issued an amended writ of entry (Case No. 8:07CV79, Filing No. 8; Filing No. 36-3 at CM/ECF p. 4).

17.  After the writ was issued, AUSA Svoboda provided a copy to the Secret Service.  In addition, she informed SA Loux that the writ was not a search warrant and it only authorized him to look at the residence and record what he saw (Filing No. 36-3 at CM/ECF p. 4).

18.  On February 26, 2007, DA Loux and Gutsmiedl executed the amended writ of entry.  AUSA Svoboda was not present during the writ's execution.  AUSA Wellman was not involved in the decision to obtain the writ, or the execution of the writ. (*Id*. at CM/ECF p. 4; Filing No. 36-5 at CM/ECF p. 4; Filing No. 36-4 at CM/ECF p. 5; Filing No. 36-2 at CM/ECF pp. 2-3).

19.  SA Loux and Gutsmiedl were aware that the writ was different from a search warrant and that their role was to document the condition of the residence, not to collect evidence (Filing No. 36-5 at CM/ECF p. 4; Filing No. 36-4 at CM/ECF p. 5).

-10-

20.   OPD Detective Miller and another OPD officer assisted with the execution of the writ while a Douglas County Sheriff watched the outside premises as a security measure (Filing No. 36-5 at CM/ECF p. 4; Filing No. 36-4 at CM/ECF p. 6).

21.   During the writ's execution, SA Loux and Gutsmiedl met a locksmith to obtain entry.  Upon entry, SA Loux and Gutsmiedl noticed that the interior of the Residence was under construction and many of the walls had holes or large sections of missing drywall.  Most of the plumbing fixtures were removed, there were no appliances and there were very few light fixtures. No one appeared to be living in the Residence (Filing No. 36-5 at CM/ECF p. 4; Filing No. 36-4 at CM/ECF p. 6).

22.   The interior of the Residence contained documents lying in plain sight.  Gutsmiedl took photographs of some of the documents in an attempt to show who might have an ownership interest in the property.  Neither Gutsmiedl nor SA Loux opened any boxes.  Neither Gutsmiedl nor SA Loux viewed, videotaped, or photographed documents that were not sitting out in plain view. Neither Gutsmiedl nor SA Loux removed any documents or other materials from the Residence and they did not see anyone else remove any documents or other materials (Filing No. 36-5 at CM/ECF pp. 5-6; Filing No. 36-4 at CM/ECF p. 7).

23.   After the amended writ of entry was executed, Gutsmiedl and SA Loux taped a seizure notice to the door and left

-11-

the property (Filing No. 36-5 at CM/ECF p. 6; Filing No. 36-4 at
CM/ECF p. 7).

24. SA Loux reported back to AUSA Svoboda, who was
provided with copies of the photographs and video, which she in
turn provided to Jason Troia on July 27, 2007. Svoboda did not
provide copies of the photographs or video to AUSA Wellman, AUSA
Sharp or Stecher (Filing No. 36-4 at CM/ECF p. 7; Filing No. 36-3
at CM/ECF p. 4).

25. AUSA Wellman was not aware of, did not see, and
did not use any materials that may have been obtained as a result
of the amended writ of entry in the prosecution of Mark Mehner
(Filing No. 36-2 at CM/ECF pp. 2-3).

26. On October 7, 2008, the parties to the civil
forfeiture action filed a stipulation agreeing to dismiss the
Residence and change the suit to reflect the Cadillac as the only
defendant property. The parties later stipulated that the
Cadillac should not be forfeited, but sold, and the net proceeds
would be available to pay restitution to Mark Mehner's victim(s).
The parties' stipulations were approved and the civil forfeiture
action was dismissed on October 27, 2009 (Case No. 8:07CV79,
Filing Nos. 62, 63, 71, 72 and 75).

27. On July 6, 2009, Mark Mehner pled guilty to Count
I of the indictment, and he was subsequently sentenced to 36

months in prison, followed by 4 years of supervised release (Case No. 07CR83, Filing Nos. 162 and 188).

28.   After his conviction, Mark Mehner filed an initial request seeking a stay of execution of his sentence and subsequently requested postconviction relief in the form of a § 2255 motion (Case No. 8:07CR83, Filing Nos. 170 and 177).  The defendant's motion for stay of execution and his § 2255 motion were denied on February 8, 2010 (Case No. 8:07CR83, Filing Nos. 188 and 189).

## B.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"To survive a motion for summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." Putman v. Unity Health Sys., 348 F.3d 732, 733-34 (8th Cir. 2003) (internal quotation & alterations omitted).  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

-13-

Although we view the facts in the light most favorable to the non-moving party, we do not accept unreasonable inferences or sheer speculation as fact. The moving party bears the burden to demonstrate that there is no issue of material fact. The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of specific facts creating a triable controversy. *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (internal citations & quotations omitted).

## C.   **Federal Defendants' Motion for Summary Judgment**

In their Brief in Support of their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the Federal Defendants argue, among other things, that they are entitled to relief under the doctrines of sovereign and qualified immunity (Filing No. 61).

### 1.   *Sovereign Immunity*

As a sovereign power, the United States is immune from suit unless it consents. *Hart v. United States*, 630 F.3d 1085, 1088 (8th Cir. 2011). It is well settled that the United States has not waived its sovereign immunity for suits seeking damages based on alleged constitutional violations. *See, e.g., Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207 (9th Cir. 1988) ("[T]he United States has not waived its sovereign immunity in actions seeking damages for constitutional violations."); *FDIC*

-14-

*v. Meyer*, 510 U.S. 471, 475-78 (1994) (declining to recognize a
direct action for damages against federal agencies).  The shield
of sovereign immunity also protects United States agencies and
officers acting in their official capacities.  *Meyer*, 510 U.S. at
475; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (concluding
that suits against public officials acting in their official
capacities should be treated as suits against the public entity).

Here, Andrea Mehner alleges constitutional claims,
Counts I and IV of the Complaint, against federal agencies and
numerous individual federal employees, in both their individual
and official capacities, for monetary relief (Filing No. 1 at
CM/ECF pp. 4-7, 14-16, 19-22).  Because sovereign immunity bars
claims for monetary relief against federal agencies and federal
employees sued in their official capacities, Andrea Mehner's
claims against the federal agencies and her official capacity
claims against the individual federal employees must be
dismissed.  However, sovereign immunity does not bar Andrea
Mehner's individual capacity claims against the federal
employees.

### 2.  *Qualified Immunity*

The individual federal employees in this matter include
Gutsmiedl, SA Loux, Stecher, AUSA Sharp, AUSA Wellman and AUSA
Svoboda (Filing No. 1 at CM/ECF pp. 4-5).  The Complaint also
names an "Unknown Number of Unnamed (DOES)," and "UNKNOWN NUMBER

-15-

of UNNAMED UNITED STATES ATTORNEYS (or employees) (DOES)." (*Id*.)
Andrea Mehner claims that these individuals violated her
constitutional rights when they obtained and executed an amended
writ of entry pursuant to 18 U.S.C. § 985(b)(2).[3] (Filing No. 1
at CM/ECF p.15.)  Although Andrea Mehner does not argue that the
writ was invalid, she alleges that the Federal Defendants went
beyond the scope of the writ by opening "closed file boxes" and
removing "approximately 3 full boxes of files and documents from
the residence." (*Id*. at CM/ECF p. 11; Filing No. 78 at CM/ECF p.
7.)  She asserts she had an expectation of privacy in these items
(Filing No. 1 at CM/ECF p. 11.)  "An individual may challenge a
search under the Fourth Amendment if it violates the individual's
'reasonable expectation of privacy,' or involves an unreasonable
'physical intrusion of a constitutionally protected area' in
order to find something or obtain information." *United States v.
Cowan*, --- F.3d ----, 2012 WL 967965, at *5 (8th Cir. 2012)
(internal citations omitted); *See also Bivens v. Six Unknown
Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397
(1971) (authorizing suits for damages against federal officials
based upon a deprivation of constitutional rights).  Andrea
Mehner further asserts that the Federal Defendants provided

---

[3] Section 985(b)(2) provides that "[t]he filing of a lis
pendens and the execution of a writ of entry for the purpose of
conducting an inspection and inventory of the property shall not
be considered a seizure under this subsection." 18 U.S.C. §
985(b)(2).

-16-

false, incomplete or misleading information to the Judge in order
to obtain the amended writ of entry (Filing No. 78 at CM/ECF p.
7.)

        In opposition, the Federal Defendants argue they are
entitled to qualified immunity for these claims (Filing No. 61 at
CM/ECF pp. 28-33).  Qualified immunity is a question of law to be
determined by the Court and should ordinarily be decided long
before trial.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).
"Public officials, of course, are entitled to qualified immunity
from liability for damages under 42 U.S.C. § 1983 if 'their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'"  *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000)
(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In
short, "qualified immunity shields a defendant from suit if he or
she could have reasonably believed his or her conduct to be
lawful in light of clearly established law and the information
[that the defendant] possessed."  *Smithson v. Aldrich*, 235 F.3d
1058, 1061 (8th Cir. 2000) (citations and quotations omitted).
"The qualified immunity standard gives ample room for mistaken
judgments by protecting all but the plainly incompetent or those
who knowingly violate the law."  *Id.* (citations and quotations
omitted).  Moreover, qualified immunity is "the usual rule" and
state actors will enjoy qualified immunity in all but

-17-

"exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The Court focuses on two questions to determine whether an official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). A court "may consider these factors in either order." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011).

As discussed above, Andrea Mehner's constitutional claims stem from AUSA Svoboda's request for, and the execution of, an amended writ of entry in a civil forfeiture action. (Filing No. 36-3 at CM/ECF pp. 2-3.) This civil forfeiture action alleged that the Residence and the Cadillac, were derived from proceeds traceable to bank fraud and wire fraud conducted by Mark Mehner. (*See* Case No. 8:07CV79, Filing Nos. 1, 5 and 8.) The civil forfeiture action also alleged that the Residence was held by the Mehner Family Living Trust. (*See* Case No. 8:07CV79, Filing No. 1.) AUSA Svoboda had applied for a writ of entry in the civil forfeiture action because she (1) believed the

-18-

Residence was unoccupied, (2) needed to appraise the condition and value of the Residence and (3) needed to take an inventory of the Residence (Filing No. 36-3 at CM/ECF p. 3).  On February 26, 2007, Magistrate Judge Thalken issued the amended writ of entry and it was executed by SA Loux and Gutsmiedl (Filing No. 36-4 at CM/ECF p. 5; Filing No. 36-5 at CM/ECF p. 4; Case No. 8:07CV79, Filing No. 8.)

Before the amended writ of entry was executed, AUSA Svoboda gave SA Loux a copy of the writ and explained that it was not a search warrant and only authorized him to look at the Residence and record what he saw (Filing No. 36-3 at CM/ECF p.4; Filing No. 36-4 at CM/ECF p. 5).  During the execution of the writ, SA Loux and Gutsmiedl took photographs, videotaped both the inside and outside of the Residence and drew a diagram of the Residence (Filing No. 36-4 at CM/ECF pp. 6-8; Filing No. 36-5 at CM/ECF pp. 4-5.)  OPD Detective Miller and another OPD officer assisted with the execution of the writ while a Douglas County Sheriff watched the outside premises as a security measure. (*Id*.)  SA Loux and Gutsmiedl did not remove any documents or materials from the residence and they did not see anyone else remove documents or other materials.  (*Id*.)  AUSA Svoboda was not present during the writ's execution and the record before the Court also shows that Stecher, AUSA Sharp and AUSA Wellman were not involved in the writ's execution (Filing No. 36-1 at CM/ECF

p. 3; Filing No. 36-2 at CM/ECF pp. 2-3; Filing No. 36-3 at
CM/ECF p. 3; Filing 36-5 at CM/ECF p. 4; Filing No. 36-4 at
CM/ECF p. 6.)

        Viewing these facts in a light most favorable to Andrea
Mehner, the Court finds that Andrea Mehner has failed to
demonstrate that any Federal Defendant violated her
constitutional rights in obtaining or executing the amended writ
of entry.  Because the Federal Defendants have filed a Motion for
Summary Judgment, properly supported by affidavits, Andrea Mehner
may not rely upon unsupported allegations without "'any
significant probative evidence tending to support the
complaint.'"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249
(1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*,
391 U.S. 253, 290 (1968)); *see also* *Hernandez v. Jarman*, 340 F.3d
617, 622 (8th Cir. 2003) (stating that "in opposing a motion for
summary judgment, a nonmoving party may not rely on mere denials
or allegations in its pleadings, but must designate specific
facts showing that there is a genuine issue for trial").
Although Andrea Mehner alleges that Defendants opened "closed
file boxes" and removed "approximately 3 full boxes of files and
documents from the residence," she has not come forward with any
evidence to refute SA Loux and Gutsmiedl's testimony otherwise
(Filing No. 1 at CM/ECF p. 15).  Indeed, SA Loux and Gutsmiedl
testified that they took photographs, videotaped both the inside

-20-

and outside of the Residence and drew a diagram of the Residence (Filing No. 36-4 at CM/ECF pp. 6-8; Filing No. 36-5 at CM/ECF pp. 4-5).  These actions were authorized by the amended writ of entry.  (*See* Case No. 8:07CV79, Filing No. 8.)  To the extent that Andrea Mehner argues that taking photos of documents in plain view was beyond the scope of the writ, SA Loux and Gutsmiedl are entitled to qualified immunity because they were acting pursuant to a facially valid writ and their actions were reasonable.

Separately, Andrea Mehner has failed to come forward with any evidence in support of her allegation that Federal Defendants provided false, incomplete or misleading information to Magistrate Judge Thalken in order to obtain the amended writ of entry.  Accordingly, all of the individual Federal Defendants are entitled to summary judgment for Andrea Mehner's constitutional claims, including Counts I and IV of the Complaint.

**D.   City of Omaha, Dean Miller, OPD and Thomas Warren's Motion for Summary Judgment**

In their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the City of Omaha, Miller, the OPD and Thomas Warren ("Warren") (collectively the "City Defendants") state that they adopt the arguments made by the Federal Defendants regarding Andrea Mehner's constitutional claims

-21-

(Filing No. 65 at CM/ECF p. 2).  More specifically, the City
Defendants argue that Andrea Mehner's allegations against them
are "intertwined" with her constitutional allegations against the
Federal Defendants.  (*Id*.)

        As discussed above, Miller and another OPD officer
assisted SA Loux and Gutsmiedl with the execution of the amended
writ of entry (Filing No. 36-4 at CM/ECF pp. 6-8; Filing No. 36-5
at CM/ECF pp. 4-5).  Andrea Mehner alleges that during the writ's
execution Miller "was physically gathering documents off the
floor, out of boxes, off counters and tables, to identify if
there was a name and if it 'pertained to anything that [SA] Loux
would want to keep for organization or evidence.'"  (Filing No. 1
at CM/ECF p. 14.)  Andrea Mehner also alleges that the City
Defendants had a duty to prevent an unlawful search.  (*Id*. at
CM/ECF pp. 27-29.)  However, SA Loux and Gutsmiedl both testified
that they did not remove any documents or materials from the
residence and they did not see anyone else remove documents or
other materials (Filing No. 36-4 at CM/ECF pp. 6-8; Filing No.
36-5 at CM/ECF pp. 4-5).  Again, Andrea Mehner has not come
forward with any evidence to refute SA Loux and Gutsmiedl's
testimony, or provided any other sufficient probative evidence
that would permit a finding in her favor based on more than mere
speculation, conjecture, or fantasy.  Thus, the City Defendants
are also entitled to summary judgment on Andrea Mehner's

constitutional claims against them, including Counts I and IX of the Complaint.

**E.   Claims Against Timothy Dunning and Douglas County**

        Like the City and Federal Defendants, Timothy Dunning ("Dunning")and Douglas County have filed Motions and Briefs arguing that Andrea Mehner's claims must be dismissed (Filing Nos. 56, 57, 64 and 65).  Andrea Mehner's claims against Douglas County are that the Douglas County Sheriff's Office had "de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged" in the Complaint (Filing No. 1 at CM/ECF p. 9).  Her claims against Dunning are that, as the Douglas County Sheriff, Dunning was responsible for the conduct of his deputies.  (*Id*. at CM/ECF p. 8.)  However, the only relevant facts in this matter involving Douglas County relate to a Douglas County Sheriff who watched the outside premises as a security measure during the execution of the amended writ of entry (Filing No. 36-5 at CM/ECF p. 4; Filing No. 36-4 at CM/ECF p. 6).  As discussed above, Andrea Mehner has not come forward with any sufficient probative evidence that would permit a finding that any Defendant violated her constitutional rights during the execution of the amended writ of entry.  Consequently, Dunning and Douglas County are entitled to summary judgment on Andrea Mehner's constitutional claims against them, including Counts I and VI of the Complaint.

**F.    State Law Claims**

Andrea Mehner's remaining claims, including Counts V, VII, VIII, X and XI of the Complaint, are brought pursuant to state law (Filing No. 1 at CM/ECF pp. 22-31).  The Court declines to exercise supplemental jurisdiction over these claims because all claims over which the Court had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  However, Andrea Mehner's state law claims will be dismissed without prejudice to reassertion in the proper forum.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 11th day of May, 2012.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

---

* This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

-24-